UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| OAK POINT PARTNERS, INC., <br><br> Plaintiff, <br><br> v. <br><br> DR. HOLGER LESSING, NOT INDIVIDUALLY, BUT ONLY IN HIS CAPACITY AS THE INSOLVENCY ADMINISTRATOR IN CHARGE OF THE ASSETS OF EXODUS COMMUNICATIONS GMBH, <br><br> Defendant. | Case No.: 11-CV-03328-LHK <br><br> ORDER DENYING MOTION TO DISMISS ON GROUNDS OF INTERNATIONAL COMITY |

Before the Court is Defendant's motion to dismiss on grounds of international comity ("Mot."), and Defendant's unopposed motion to file an amended answer. *See* ECF Nos. 60; 65. The Court DENIES Defendant's motion to dismiss, and GRANTS Defendant's unopposed motion to file an amended answer.

## I.  BACKGROUND

### A.  FACTUAL HISTORY

This case arises from the efforts of Plaintiff Oak Point Partners, Inc. ("Oak Point") to collect on a debt allegedly owed by the German company, Exodus GmbH ("Exodus Germany"), to

1

its ultimate parent company, the U.S. corporation EXDS, Inc. ("EXDS").  Specifically, Plaintiff alleges that on or about October 1, 2000, Exodus Germany and EXDS executed a promissory note ("Promissory Note"), representing a $23,725,634.00 unsecured loan from EXDS to Exodus Germany.  *See* Compl. ¶¶ 13-17, Ex. 2, Ex. 3.  The Promissory Note contains a California choice of law provision, and a provision by which the parties submitted to the jurisdiction of this Court and waived venue objections.  *Id.* ¶ 10, Ex. 2.

In September, 2001, EXDS filed for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, in the United States Bankruptcy Court for the District of Delaware.  *Id.* ¶ 3.  In early 2002, Exodus Germany initiated bankruptcy proceedings in Germany, and Dr. Holger Lessing was appointed insolvency administrator, charged with managing and disposing of Exodus Germany's assets.  *Id.* ¶ 7.  In that capacity, Dr. Lessing is authorized to sue and be sued on behalf of and in connection with claims by and against Exodus Germany.  *Id.*

In 2007, Oak Point purchased all of EXDS's remaining assets from EXDS's Bankruptcy Plan Administrator.  *Id.* ¶ 5.  Oak Point, a U.S. "private investment firm specializing in the purchase of residual assets including those at the tail end of commercial bankruptcy cases," paid $29,320.00 for EXDS's remaining assets, including the Promissory Note.  *See id.* and Ex. 1; Decl. of Peter M. Bransten, ECF No. 55, ¶ 2, Ex. A.

In October, 2010, Oak Point made the first attempt to present a creditor's claim on the basis of the Promissory Note, filing a claim with Dr. Lessing for the full amount due.  Compl. ¶ 22.  Dr. Lessing, as the insolvency administrator, objected to Oak Point's claim, in part because EXDS had never presented a creditor's claim despite knowing of Exodus Germany's bankruptcy proceedings since "as early as 2002."  *Id.* ¶ 24; Mot. at 3.  On July 7, 2011, Oak Point commenced this instant action against Dr. Lessing in his capacity as the insolvency administrator.  Mot. at 1.  The complaint alleges breach of the promissory note by Exodus Germany, and asks this Court to establish the validity of Oak Point's claim, as well as to issue an order directing Defendant to include Oak Point's claim in Exodus Germany's insolvency table.  *Id.* at 6.

### B. Procedural History

Defendant failed to timely respond to the complaint, and the Clerk entered default and default judgment against Defendant on November 15, 2011. ECF Nos. 16, 17. On September 18, 2012, this Court set aside the default judgment, finding that Defendant's default was due to excusable neglect. ECF No. 46 at 8.

On June 6, 2012, while Defendant's motion to set aside default judgment was pending in this Court, a "final distribution report" was filed in Exodus Germany's insolvency case. Decl. of Janice A. Alwin ("Alwin Decl."), ECF No. 35, ¶ 10. Under German law, actions by a creditor to (a) have foreign judgments recognized or (b) have a claim determined on the merits must be commenced within two weeks of the filing of the final distribution report. In compliance with this requirement, Oak Point timely initiated a German proceeding against Dr. Lessing in the Regional Court of Frankfurt ("Regional Court"). Alwin Decl. ¶ 10. Oak Point asked the Regional Court to recognize this Court's default judgment or, in the alternative, to determine Oak Point's claim on the merits and to order Defendant to include Oak Point's claim in Exodus Germany's insolvency table. *Id.* Oak Point subsequently withdrew the former motion in light of this Court's order setting aside the default and default judgment. *See* Decl. of Caludia Ufer ("Ufer Decl."), ECF No. 71, ¶ 6.

Issues currently pending before the Regional Court include whether the Regional Court has exclusive jurisdiction to decide the merit of Oak Point's claim, the validity of Oak Point's claim under the promissory note, choice of law, whether Oak Point's claim is barred by statute of limitation, and the priority of Oak Point's claim. *Id.* ¶ 7. At a December 4, 2012 hearing before the Regional Court, Oak Point also requested a stay of the German proceeding to have these issues decided by this Court, but the Regional Court declined to immediately rule on the request. *Id.* ¶ 11. At a hearing before this Court on March 28, 2013 (the "March 28 hearing"), the parties represented that all these issues remain pending before the Regional Court.

On November 13, 2012, Defendant filed the instant motion to dismiss on grounds of international comity ("Mot."). ECF No. 51. Plaintiff filed an opposition on December 11, 2012 ("Opp'n"), to which Defendant replied on December 20, 2012 ("Reply"). ECF Nos. 66, 69. Defendant also filed a motion for leave to file a first amended answer, as an alternative to its motion to dismiss. ECF No. 60. Plaintiff does not oppose Defendant's latter motion. ECF No. 65.

## II. LEGAL STANDARD

Defendant seeks dismissal of this action on grounds of international comity. Comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." *H.K. & Shanghai Banking Corp. In re Simon,* 153 F.3d 991, 998 (9th Cir. 1998) (quoting *Hilton v. Guyot,* 159 U.S. 113, 163-64 (1895)). It is a "voluntary deference to the acts of other governments, undertaken for the common good even though no transnational institution exists to exert any compulsion." *In re Grand Jury Proceedings, Yanagihara Grand Jury, Impanelled, June 13, 1988,* 709 F.Supp. 192, 195 (C.D. Cal. 1989) (quoting 18 Wright, Miller & Cooper, Federal Practice and Procedure § 4473 (1981).

The Ninth Circuit has clearly stated that comity is required only in instances of a "true conflict" between domestic and foreign laws. *See In re Simon,* 153 F.3d at 999; *Sarei v. Rio Tinto*, PLC, 487 F.3d 1193, 1211-12 (9th Cir. 2007), *remanded on other grounds after reh'g en banc,* 550 F.3d 822 (9th Cir. 2008). The party requesting comity bears the burden of demonstrating the existence of a true conflict of laws. *See In re Grand Jury Proceedings*, 40 F.3d 959, 964 (9th Cir. 1994) ("A party relying on foreign law to contend that a district court's order violates principles of international comity bears the burden of demonstrating that the foreign law bars compliance with the order.") (citations omitted). If the party fails to produce evidence in support of such a conflict, then he fails to meet his burden on the comity issue, and the district court need not consider it. *See id.* (citing *In re Grand Jury Proceedings (Shams),* 873 F.2d 238, 239-40 (9th Cir. 1989)).

Other circuits have recognized exceptions to the conflict of laws requirement. Specifically, emphasizing the value of the "equitable and orderly distribution of a debtor's property" through a single proceeding, the Second Circuit has held that, even absent a current conflict of laws, "U.S. courts should ordinarily decline to adjudicate creditor claims that are the subject of a foreign bankruptcy proceeding." *JP Morgan*, 412 F.3d 418 (2nd Cir. 2005) (citations omitted); *Allstate Life Ins. Co.*, 994 F.2d 996, 999 (2nd Cir. 1993). However, the Ninth Circuit has not yet recognized a bankruptcy exception, or any other exception to *Simon*'s "clear statement" that a true

conflict of laws is a "predicate" for international abstention. *See Sarei*, 487 F.3d at 1211-12; *Farhang v. Indian Inst. of Tech., Kharagpur*, C-08-02658 RMW, 2010 WL 2228936 (N.D. Cal. June 1, 2010); *Mujica v. Occidental Petroleum Corp.*, 381 F.Supp.2d 1134, 1156 (C.D. Cal. 2005). Indeed, as will be discussed below, the Bankruptcy Appellate Panel of the Ninth Circuit has held that Chapter 15 of the Bankruptcy Code is designed to concentrate in the bankruptcy courts the decision of whether to grant comity to foreign insolvency proceedings. *See In re Iida*, 377 B.R. 243, 256-57 & n.21 (B.A.P. 9th Cir. 2007).

If a true conflict of laws exists, courts in the Ninth Circuit must then look to the nonexhaustive standards set forth in Foreign Relations Law Restatement § 403(2).[1] *See also Sarei*, 487 F.3d at 1212.

### III. DISCUSSION

Due to the absence of a true conflict of laws, the Court DENIES Defendant's request that this case be dismissed under the principles of international comity. The Court further finds that Chapter 15 of the Bankruptcy Code provides the proper avenue for the Defendant to seek an exercise of comity. In light of Defendant's insistence that this Court dismiss this case because of comity and not because of international abstention, the Court declines to abstain on the basis of the *Colorado River* doctrine. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976).

### A.     True Conflict of Laws

As mandated by the Ninth Circuit, the Court begins with the threshold determination of whether a true conflict of laws exists. It is well established that a true conflict between domestic and foreign laws requires more than a mere inconsistency, and that no conflict exists "where a person subject to regulation by two states can comply with the laws of both. *Hartford Fire*

---

[1] The restatement factors include: the connections between the regulating state and the person principally responsible for the activity to be regulated; the importance of regulation to the regulating state; the existence of justified expectations that might be protected or hurt by the regulation; the importance of the regulation to the international political, legal, or economic system; the extent to which the regulation is consistent with the traditions of the international system; the extent to which another state may have an interest in regulating the activity; and the likelihood of conflict with regulation by another state. *See* Foreign Relations Law Restatement § 403(2).

*Insurance Co. v. California,* 509 U.S. 764, 794-95 (1993). *See also Mujica*, 381 F.Supp. 2d 1134, 1156 (quoting *Metro Industries, Inc. v. Sammi Corporation,* 82 F.3d 839, 847 n. 5 (9th Cir.1996) ("A foreign country's allowing or even encouraging particular conduct which is prohibited in the United States no longer provides a sufficient basis for finding a conflict between foreign and domestic law.")).

Defendant has identified only one potential "true conflict of laws." Defendant maintains that German bankruptcy law provides the German court with exclusive jurisdiction to determine whether Oak Point's claim should be allowed on Exodus Germany's insolvency table. Mot. at 14-15 (citing Section 28 and 174 through 180 of the German Insolvency Statute); Reply at 6-7. Specifically, under Section 179(1) of the German Insolvency Statute, if an insolvency administrator denies a creditor's claim, the creditor can initiate a legal action to determine the merits of its claim against the debtor. *See* Decl. of Dr. Holger Lessing ("Lessing Decl."), ECF No. 52, ¶ 27, Ex. B, Section 179. Section 180(1) of the German Insolvency Statute further provides that the Local Court where the insolvency proceedings are or were pending "shall have exclusive jurisdiction" over such action, unless the subject-matter falls outside of the jurisdiction of the Local Court, in which case the Regional Court in whose district the Insolvency Court is located shall have "exclusive jurisdiction." *See id.* In this case, the monetary amount at issue exceeds the €5,000.00 jurisdictional maximum of the Local Court, and thus German law appears to grant "exclusive jurisdiction" to the Regional Court. *See* Lessing Decl. ¶ 29; Decl. of Dr. Burkhard Hess ("Hess Decl."), ECF No. 53, ¶ 10.

The Court acknowledges that the grant of exclusive jurisdiction over a proceeding to a foreign court would present a "true conflict of laws" with this Court's exercise of diversity jurisdiction under 28 U.S.C. § 1332. *See Sarei*, 487 F.3d at 1211-12 (finding a foreign act prohibiting the filing of claims in foreign courts was in clear conflict with the statute vesting jurisdiction to hear such claims in the U.S.). However, Plaintiff has argued that the German Insolvency Statute does not in fact mandate exclusive jurisdiction. *See* Opp'n at 3-4; Decl. of Steffen Schneider. Both parties have submitted expert declarations to support their respective interpretations of whether the "exclusive jurisdiction" clause is intended to preclude a foreign

Court's exercise of jurisdiction . *See* Decl. of Dr. Peter Von Wilmosky, ECF No. 68; Hess Decl. and Suppl. Decl. of Professor Dr. Burkhard Hess, ECF 70.  At the March 28 hearing, the parties informed this Court that the disputed interpretation of "exclusive jurisdiction" is an issue that remains pending before the Regional Court, which has deferred ruling on the issue for further briefing.

The Court is not persuaded that preempting a foreign court's ruling on the scope of its own jurisdiction would well serve the principles of international comity.  Rather, the Court finds that the open question of the Regional Court's exclusive jurisdiction fails to qualify as a true conflict of laws.  *See Mujica*, 381 F.Supp.2d at 1155; *Farhang*, 2010 WL 2228936 at *1 (finding no existing conflict when foreign Court had not issued any findings of fact or a final judgment).  As a result, Defendant has failed to meet his burden of proving the propriety of abstention on grounds of international comity.  *See In re Grand Jury Proceedings*, 40 F.3d 959, 965 (9th Cir. 1994).

### B.     Recognition of Foreign Proceedings Under Chapter 15

Furthermore, while Defendant has emphasized the policy concerns motivating Chapter 15 of the Bankruptcy Code as a justification for this Court to exercise comity, precedent cited by Defendant supports the opposite conclusion.  *See* Mot. at 7 (citing *In re Iida*, 377 B.R. 243, 253-54 (9th Cir. BAP 2007).  The decision of the Bankruptcy Appellate Panel of the Ninth Circuit cited by Defendant found that this Court is precluded from relying on principles of comity until the foreign insolvency proceeding is recognized under Chapter 15 of the Bankruptcy Code.  *See In re Iidia*, 377 B.R. at 257.

Chapter 15 allows a foreign representative of a debtor in a foreign bankruptcy case to petition a U.S. bankruptcy court for an order seeking to have the foreign proceeding recognized as the debtor's "foreign main proceeding."  *See* 11 U.S.C. §§ 1504, 1509, 1515, and 1520(a).  Once a foreign main proceeding is recognized, all domestic actions against the debtor and its property are subject to the automatic stay provisions of the Bankruptcy Code, § 1520(a)(1), and U.S. courts are required to grant comity to the foreign proceeding, § 1509(b).  In briefing and at the March 28 hearing, Defendant indicated that if this Court declines to stay or dismiss the case, Defendant will initiate an ancillary U.S. bankruptcy case for this very purpose.  *See* Mot. at 9, n.3 (noting that

Defendant had sought to avoid the expense of commencing an ancillary proceeding in the United States solely for the purpose of staying this action).[2]

The Court is sympathetic to Defendant's desire to conserve the assets of the bankruptcy estate, as well as those of the judicial system.  However, Defendant's selective citation of *In re Iidia* omitted a persuasive holding that Defendant must first obtain recognition of the foreign proceedings through the bankruptcy court, before requesting comity from this Court.  Examining Chapter 15 and its legislative history, the Bankruptcy Appellate Panel found that Chapter 15 was designed to "erect[] a structure in which the foreign representative passes through the bankruptcy court for a recognition decision, the specified consequences of which are that . . . all courts in the United States must grant comity or cooperation to the foreign representative."  *See id.* at 257, citing 11 U.S.C. § 1509.  The Panel concluded that "Congress specifically intended that control of these questions be concentrated in the bankruptcy court."  *Id.*[3]  *See also In re Loy*, 380 B.R. 154, 163-65 (Bankr. E.D. Va. 2007) (citing *In re Iidia* as persuasive authority).

The *In re Iidia* Panel found support for "the primacy of the bankruptcy court's authority" over the question of whether comity or assistance should be granted by other courts in 11 U.S.C. § 1509.  § 1509 provides that if the bankruptcy court grants recognition of the foreign proceeding, a court in the U.S. "shall grant comity," but if the bankruptcy court denies recognition, the bankruptcy court may "issue any appropriate order necessary to prevent the foreign representative from obtaining comity or cooperation from courts in the United States."  11 U.S.C. § 1509(b) and (d).  The section further provides that "[a] request for comity . . . by a foreign representative in a

---

[2] Plaintiff has not contested that the German insolvency proceeding would likely be recognized as a "foreign main proceeding."  Plaintiff has argued only that comity might not be granted to the foreign proceeding if doing so would contravene "fundamental U.S. public policy."  Opp'n at 5.

[3] The opinion cites the House Report, which explains  that "some cases in state and Federal courts . . . have granted comity suspension or dismissal of cases involving foreign proceedings without requiring a [former] section 304 petition . . . Even if the result is correct in a particular case, the procedure is undesirable, because there is room for abuse of comity.  Parties would be free to avoid the requirements of this chapter and the expert scrutiny of the bankruptcy court by applying directly to a state or Federal court unfamiliar with the statutory requirements . . . This section concentrates the recognition and deference process in one United States court [and] ensures against abuse . . ."  *In re Iida*, 377 B.R. 243, 257 n.21 (B.A.P. 9th Cir. 2007) (citing H.R. Rep. No. 109–31, at 110–11 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 173 (citations omitted).

8
Case No.: 11-CV-3328-LHK
ORDER  DENYING MOTION TO DISMISS ON GROUNDS OF INTERNATIONAL COMITY

court in the United States other than the court which granted recognition shall be accompanied by a certified copy of an order granting recognition under section 1517." 11 U.S.C. § 1509(c).

Although no binding authority has explicitly adopted the Bankruptcy Appellate Panel's interpretation, it is clear that Congress has designed a mechanism specifically to address when a grant of comity to foreign insolvency proceedings would be appropriate. In light of the absence of a true conflict of law, the Court finds that Chapter 15 provides the appropriate avenue for Defendant to seek recognition of the foreign proceedings and the exercise of comity by U.S. courts.

### C. International Abstention

Plaintiff has suggested that the doctrine of international abstention provides a more appropriate mode of analysis for this case, in light of the parallel proceedings before the Regional Court which raise the same issues that are pending before this Court. *See* Opp'n at 6-7; *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976). However, while recognizing that abstention is not foreclosed, Defendant has thus far explicitly disclaimed reliance on abstention, both in his briefing and at the March 28 hearing. *See* Reply at 11 & n.5 ("Here, the Insolvency Administrator seeks dismissal based on the doctrine of international comity, not international abstention"); Transcript of March 28 hearing, ECF No. 73, at 7:5-14 (counsel for Defendant emphasizing that *Colorado River* abstention "is not the basis of our motion here, and this is really important . . ."). As such, the Court does not abstain pursuant to the *Colorado River* doctrine.

### IV. CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's motion to dismiss on grounds of international comity, and finds that Chapter 15 provides the appropriate avenue for Defendant to pursue a stay of these proceedings. The Court GRANTS Defendant's unopposed motion to file an amended answer.

**IT IS SO ORDERED.**

Dated: April 19, 2013

*Lucy H. Koh*
LUCY H. KOH
United States District Judge